IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MANDIRA KUMAR, *Individually and on behalf*  :
*of all other similarly situated*; DENNIS
DANDELES, *Co-Lead Plaintiff*; and, THOMAS
WALSH, *Co-Lead Plaintiff*  :
       *Plaintiffs*,                      CIVIL ACTION
                                        NO. 19-0362

       v.             :

KULICKE AND SOFFA INDUSTRIES, INC.;
FUSEN CHEN; and, JONATHAN CHOU     :
       *Defendants*.

## MEMORANDUM

**Jones, II    J.**                                           **October 9, 2019**

## I.    INTRODUCTION

      Plaintiffs Dennis Dandeles and Thomas Walsh ("Plaintiffs") are Co-Lead Plaintiffs in

this class action securities fraud claim brought against Defendants Kulicke and Soffa Industries,

Inc. ("Kulicke" or the "Company"), Jonathan Chou ("Defendant Chou"), and Fusen Chen

("Defendant Chen").[1, 2] Defendants filed the instant Motion to Dismiss Plaintiffs' Amended

---

[1] On May 11, 2018 Plaintiff Mandira Kumar initiated this Complaint individually and on behalf all other similarly situated persons. Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), Plaintiffs Dandeles and Walsh moved to be appointed Lead Plaintiffs on July 10, 2018. 15 U.S.C. § 78u-4(a)(3)(B); (ECF Nos. 8-9, 12-13.) On September 11, 2018, Plaintiffs Dandeles and Walsh's motions were granted, and the parties were appointed as Co-Lead Plaintiffs for this action. (ECF No. 26.) Accordingly, Plaintiffs' Amended Complaint was filed by Co-Lead Plaintiffs Dandeles and Walsh, individually and on behalf of all other individuals similarly situated. (Am. Compl. 2.)

[2] The Amended Complaint first alleges that Kulicke, Defendant Chou, and Defendant Chen each violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 promulgated thereunder ("Count I"). (Am. Compl. ¶¶ 53-62.) Second, Plaintiffs' Amended Complaint alleges that Defendants Chou and Chen each individually violated Section 20(a) of the Exchange Act ("Count II"). (Am. Compl. ¶¶ 63-68.)

Complaint pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6). For the reasons set forth below, Defendants' Motion to Dismiss shall be granted, and Plaintiffs shall be granted leave to amend.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Kulicke is a publicly traded company incorporated in Pennsylvania and headquartered in Singapore. (Am. Compl. ¶¶ 2, 14.) The Company designs, manufactures, and sells capital equipment and expendable tools used to assemble semi-conductor devices. (Am. Compl. ¶¶ 2, 14.) During the relevant time period, Defendant Chou served as Kulicke's Chief Financial Officer ("CFO"), Principal Accounting Officer, and Executive Vice President, while Defendant Chen served as Kulicke's President and Chief Executive Officer ("CEO"). (Am. Compl. ¶¶ 15-16.) Co-Lead Plaintiffs Dandeles and Walsh allege that they purchased shares of Kulicke at an artificially inflated price between November 16, 2017 and May 10, 2018 ("Class Period"). (Am. Compl. ¶¶ 1, 12-13.)

Kulicke submitted its 2017 annual report ("2017 10-K") with the Securities and Exchange Commission ("SEC") on November 16, 2017. (Am. Compl. ¶ 22.) The 2017 10-K provided the Company's financial statements and position for the 2017 fiscal year which had concluded on September 30, 2017.[3] (Am. Compl. ¶ 22.) In addition to signing the 2017 10-K, Defendants Chou and Chen signed the Sarbanes-Oxley Act certifications ("SOX certifications") contained therein. (Am. Compl. ¶¶ 22-23.)

---

[3] In addition to stating that Kulicke's 2016 and 2017 fiscal years ended on October 1st and September 30th respectively, Plaintiffs' Amended Complaint also described Kulicke's first fiscal quarter of 2018 as concluding on December 31, 2017. (Am. Compl. ¶¶ 22, 26, 32-34.) Based upon these descriptions, this Court infers that Kulicke's first fiscal quarter runs from October 1st through December 31st, while the subsequent fiscal quarters extend from January 1st through March 31st, April 1st through June 30th, and July 1st through September 30th, respectively each year.

By signing and certifying the 2017 10-K, Defendants Chou and Chen attested to its accuracy. (Am. Compl. ¶ 23.) Each Defendant certified that "[b]ased on [their] knowledge" the 2017 10-K did not contain any untrue statement of material fact. Additionally, the certifications stated that "based on [Defendant Chou and Chen's] most recent evaluation of internal controls over financial reporting[]" both Defendants had disclosed to the Company's auditor and audit committee "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting; and [a]ny fraud . . . involv[ing] management or other employees who have a significant role in the [Company's] internal control over financial reporting." (Am. Compl. ¶ 23.) The filing also stipulated that Kulicke's management was responsible "for establishing and maintaining adequate internal control over financial reporting[.]" (Am. Compl. ¶ 24.) Lastly, the 2017 10-K stated that Kulicke's management concluded that the Company had maintained effective internal controls over its financial reporting as of September 30, 2017. (Am. Compl. ¶ 24.)

On November 27, 2017—eleven days after Kulicke filed its 2017 10-K—the Company issued a press release ("November 27th Press Release" ) announcing that Defendant Chou resigned from his positions, effective immediately, in order "to spend more time with his family and to pursue other interests[.]" (Am. Compl. ¶ 37.) However, in an effort to ensure an orderly transition, Defendant Chou remained with Kulicke until February 28, 2018. (Am. Compl. ¶¶ 37-38; Mot. Dismiss Am. Compl. 9 n.3.) On March 5, 2018, Defendant Chou was named the CFO of Nanometrics Incorporated. (Am. Compl. ¶ 38.) He remained in that role until June 25, 2018, at which point Nanometrics informed Defendant Chou that his employment was being terminated immediately. (Am. Compl. ¶ 38.)

On May 10, 2018, over two months after Defendant Chou left Kulicke, the Company filed an 8-K with the SEC ("May 10th 8-K"). (Am. Compl. ¶¶ 26, 29.) In a press release associated with the May 10th 8-K, the Company announced that it would not be filing its second quarter 10-Q on time, and that its 2017 10-K could no longer be relied upon. (Am. Compl. ¶ 26.) The press release stated that "[f]ollowing the end of the [second] fiscal quarter [of 2018], the Company learned of certain unauthorized transactions by a senior finance employee."[4] (Am. Compl. ¶ 26.) Up until that point, an ongoing internal investigation had uncovered that "certain warranty accruals in prior periods were accounted for incorrectly and [were] therefore misstated." (Am. Compl. ¶ 26.) On the following day, the Company's stock price dropped $1.80 (a 7.5% decline) from the prior day's closing price. (Am. Compl. ¶ 27.)

Nearly three weeks later, Kulicke announced the results of its internal investigation as an amendment to the May 10th 8-K ("May 30th 8-K/A"). (Am. Compl. ¶ 29.) Therein, Kulicke disclosed that its investigation had uncovered "an unauthorized payment . . . initiated by a senior finance employee to an unapproved vendor in the second fiscal quarter of fiscal 2018."[5] (Am. Compl. ¶ 30.) "The payment was made based on falsified accounting records where two manual journal entries totaling $5.8 million . . . had been recorded in accounts payable and costs of sales." (Am. Compl. ¶ 30.) Kulicke's management classified the payments as "a misappropriation of [the Company's] assets." (Am. Compl. ¶ 30.) The May 30th 8-K/A further stated that "effective controls over the recording and review of manual journal entries related to [the Company's] warranty accrual [were] not maintained as of September 30, 2017, and journal

---

[4] *See supra* n. 3.
[5] *See supra* n. 3.

entries related to [the Company's] warranty accrual and accounts payable [were] not maintained as of December 30, 2017." (Am. Compl. ¶ 31.)

On the following day, the Company filed an amended annual report for the 2017 fiscal year ("2017 10-K/A").[6] (Am. Compl. ¶ 32.) The 2017 10-K/A stated that Kulicke did not maintain "effective control over review of journal entries . . . as a result of [a] management override of journal entries of the accrual for warranty." (Am. Compl. ¶ 33.) Consequently, Kulicke misstated its warranty expense, warranty accrual accounts, and related financial disclosures. (Am. Compl. ¶ 33.) The deficiency was classified as a material weakness in the Company's internal controls over financial reporting. (Am. Compl. ¶ 33.) Contrary to statements contained in the 2017 10-K, the Company had failed to maintain effective internal control over financial reporting as of September 30, 2017. (Am. Compl. ¶ 32.)

On that same day, the Company filed an amended quarterly report for the first fiscal quarter of 2018 ("December 2018 10-Q1/A").[7] (Am. Compl. ¶ 34.) The December 2018 10-Q1/A disclosed that Kulicke's investigation identified additional payments made to a different vendor during the first fiscal quarter of 2018.[8] (Am. Compl. ¶ 35.) The payments—made by the same senior finance employee—were also made through falsified accounting records. (Am. Compl. ¶ 35.) As a result, the Company announced that it was "in the process of assessing its plan for remediation of the material weaknesses[,]" through which Kulicke anticipated changes in its finance leadership personnel. (Am. Compl. ¶ 36.)

---

[6] *See supra* n. 3.
[7] *See supra* n. 3.
[8] *See supra* n. 3.

This matter comes before this Court via transfer from the Central District of California. (ECF No. 54.) Upon transfer, Defendants filed the present Motion to Dismiss Plaintiffs' Amended Complaint.

## III. STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, courts must first "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal quotation marks and citation omitted). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Second, "[the] court[ ] must consider the complaint in its entirety as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take

judicial notice."[9] *Institutional Investors Grp. v. Avaya, Inc*, 564 F.3d 242, 252 (3d Cir. 2009)

("*Avaya*") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007)

("*Tellabs*")). However, in the context of a securities fraud claim, courts do not simply ask

whether plaintiff may be entitled to relief based upon any reasonable reading of the Complaint.

*Id.* Plaintiffs must instead satisfy the heightened pleading standards prescribed by Rule 9(b) and

the PSLRA. *Id.* at 252-53.

### B.     Rule 9(b) and the PSLRA

A securities fraud Complaint may be dismissed apart from Rule 12(b)(6) if it fails to meet

Rule 9(b) or the PSLRA's pleading requirements. *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394

F.3d 126, 145 (3d Cir. 2004). Under Rule 9(b) and the PSLRA, Plaintiffs "may not benefit from

---

[9]     Defendants request that this Court take judicial notice of the following documents: (1) the 2017 10-K; (2) the November 27th Press Release; (3) the May 30th 8-K/A; and, (4) a spreadsheet printout from the *Yahoo! Finance* website containing Kulicke's daily closing stock price from May 11, 2018 to August 9, 2018. (Defs.' Mot. Req. Judicial Notice, ECF No. 68.) Federal Rule of Evidence Rule 201(b) provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Rule 201(c) further explains that a court "may take judicial notice on its own[,] or [a court] must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(1)-(2).

Further, the court is permitted to take judicial notice of documents that are "integral to or explicitly relied upon" in a Complaint. *Fallon v. Mercy Catholic Med. Ctr. of SE. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Accordingly, Defendants' Motion to Take Judicial Notice of the 2017 10-K (Am. Compl. ¶¶ 22-24), the November 27th Press Release (Am. Compl. ¶ 37), and the May 30th 8-K/A (Am. Compl. ¶¶ 29-31) shall be granted because each document is integral to and is explicitly relied upon in Plaintiffs' Amended Complaint.

Additionally, the court may take judicial notice of "stock price data compiled by [a reliable financial] news service." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002); *see also Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000) (finding that a court may take judicial notice of historical stock prices taken from "a source whose accuracy cannot be reasonably questioned"). Because Kulicke is a publicly traded company whose historical security prices can be ascertained with no questions with respect to the data's accuracy or legitimacy, this Court grants Defendants' unopposed request to take judicial notice of the *Yahoo! Finance* stock price printout.

inferences flowing from vague or unspecific allegations – inferences that may arguably have

been justified under a traditional Rule 12(b)(6) analysis." *In re Rockefeller Ctr. Props., Inc. Sec.*

*Litig.*, 311 F.3d 198, 224 (3d Cir. 2002). Rather, the PSLRA requires that a Complaint "specify

each statement alleged to have been misleading, the reason or reasons why the statement is

misleading, and if an allegation . . . is made on information and belief, the complaint shall state

with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Secondly, it

requires a Complaint to "state with particularity facts giving rise to a strong inference that the

defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Third Circuit has recognized that Rule 9(b)'s requirement for particularity is

subsumed by Section 78u-4(b)(1) of the PSLRA. *Avaya*, 564 F.3d at 253. Consequently, a

plaintiff must plead the "who, what, when, where and how: the first paragraph of any newspaper

story." *Id.* (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)). However,

the pleading standards of the PSLRA and the Rule 9(b) standards diverge in one crucial respect.

*Id.*

Unlike Rule 9(b), Section 78u-4(b)(2) of the PSLRA does not permit a plaintiff to

generally allege a defendant's state of mind. *Avaya*, 564 F.3d at 253. Instead, the PSLRA

imposes an "exacting pleading standard for scienter." *Avaya*, 564 F.3d at 253. Under this

standard, a plaintiff must allege facts with particularity that when pled establish a strong

inference that the defendant acted with the requisite degree of scienter. *Tellabs*, 551 U.S. at 321.

To that end, the Supreme Court has recognized that "[t]he strength of an inference cannot

be decided in a vacuum." *Id.* at 323. Courts "must consider plausible, nonculpable explanations

for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 310. A Complaint

will only survive "if a reasonable person would deem the inference of scienter cogent and at least

as compelling as any plausible opposing inference one could draw from the facts alleged." *Id.* at 317.

## IV.    DISCUSSION

### A.    Plaintiffs' Section 10(b) and Rule 10b-5 Claims

Count I of Plaintiffs' Amended Complaint alleges that Defendants Chou, Chen, and Kulicke violated Section 10(b) of the Exchange Act and the incorporated SEC Rule 10b-5. (Am. Compl. ¶ 54.) Section 10(b) prohibits the "use or employ[ment], in connection with the purchase or sale of any security registered on a national securities exchange[,] . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate[.]" 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements Section 10(b) by making it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). A fact or omission is deemed to be material "if there is a substantial likelihood that it would have been viewed by the reasonable investor as having significantly altered the total mix of information available to the investor."[10] *In re NAHC,* 306 F.3d at 1330 (internal quotation marks and citation omitted).

To successfully state a securities fraud claim, a plaintiff must allege "(1) a material misrepresentation or omission [by the defendant], (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the

---

[10] The Third Circuit has recognized that questions regarding the materiality of a misrepresentation are "traditionally . . . viewed as particularly appropriate for the trier of fact [to assess]." *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 872 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1425). However, the court can rule a representation or omission to be immaterial as a matter of law at the pleading stage "[i]f the representation is so obviously unimportant to an investor that reasonable minds could not differ on the question of materiality[.]" *Id.* at 872, 875.

misrepresentation or omission, (5) economic loss, and (6) loss causation." *In re Hertz Global Holdings Inc.,* 905 F.3d 106, 114 (3d Cir. 2018) (quoting *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014)). Defendants' contend Plaintiffs failed to sufficiently plead the material misrepresentation and scienter elements with respect to each Defendant, and that certain Plaintiffs failed to allege that they suffered economic loss. Accordingly, this Court shall address these three elements below.

> ### 1. Material misrepresentations on the part of Defendants Chou, Chen, and Kulicke

Defendants argue that Plaintiffs failed to plead any "actionable misstatements with the particularity required by the PSLRA." (Mot. Dismiss Am. Compl. 2-3.) Specifically, Defendants contend Plaintiffs did not plead that the SOX certifications and other statements contained within the 2017 10-K were false at the time they were made. (Mot. Dismiss Am. Compl. 14 n.4.) As previously stated, to satisfy the material misrepresentation element under Rule 10b-5, a Complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief . . . all facts on which that belief is formed." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018). Plaintiffs must plead "the who, what, when, where and how: the first paragraph of any newspaper story." *Avaya,* 564 F.3d at 253. Allegations are only actionable if the alleged statements or omissions were false or misleading at the time they were made. *Id.* at 267 (quoting *In re NAHC*, 306 F.3d at 1330); *see also City of Cambridge Ret. Sys.*, 908 F.3d at 883 (concluding that an attempt to plead falsity through "speculative fraud by hindsight" did not satisfy the material misrepresentation element); *Wanca v. Super Micro Computer Inc.*, No. 5:15-cv-04049-EJD, 2018 U.S. Dist. LEXIS 107758, at *14 (N.D. Cal. June 27, 2018) (stating that pleading later-discovered inaccuracies in a SOX certification did not meet

the PSLRA's pleading standards if the plaintiff failed to allege facts which showed that the defendants knew the reports were false at the time they were made); *Williams v. Globus Med., Inc.*, 869 F.3d 235, 244 (3d Cir. 2017) (relying on conjecture based on subsequent events did not sufficiently satisfy the heightened pleading standards of the PSLRA); *SEPTA. v. Orrstown Fin. Servs., Inc.*, No. 1:12-cv-00993, 2015 U.S. Dist. LEXIS 80584, at *137 (M.D. Pa. June 22, 2015) (finding that allegations were improperly based on hindsight and therefore not actionable when plaintiffs failed to plead that a company knew its internal controls were ineffective at the time it issued the reports in question).

In this case, Plaintiffs' Amended Complaint alleges that Defendants' statements in the 2017 10-K and the associated SOX certifications were false or misleading. (Am. Compl. ¶¶ 22-24.) The Amended Complaint offers three reasons as to how Defendants' statements were false or misleading. (Am. Compl. ¶ 25.) First, it alleges that contrary to statements in the 2017 10-K, Kulicke "did not maintain effective controls over the recording and review of manual journal entries [as of September 30, 2017], constituting a material weakness in the Company's internal control over financial reporting." (Am. Compl. ¶ 25.) Second, during the first and second fiscal quarters of 2018, a senior finance employee made unauthorized payments based on falsified accounting records.[11] (Am. Compl. ¶ 25.) These unauthorized payments were made in the form of manual journal entries. (Am. Compl. ¶ 25.) Lastly, the journal entries were recorded because of a management override in the Company's controls. (Am. Compl. ¶ 25.)

The allegations with respect to false or misleading statements on the part of Defendant Chou are based upon statements made in the Company's May 10th 8-K, May 30th 8-K/A, December 2018 10-Q1/A, and the 2017 10-K/A. (Am. Compl. ¶¶ 26, 29-35.) The Amended

---

[11] *See supra* n. 3.

Complaint provides two theories for how Defendant Chou's certifications were false or misleading at the time they were made. (Am. Compl. ¶ 39.) First, it alleges that Defendant Chou was the unnamed senior finance employee responsible for the unauthorized payments. (Am. Compl. ¶ 39.) To support this assertion, the Complaint alleges that the number of employees who were "senior," "finance employees," and in "management" was extremely limited at the time of the misappropriations. (Am. Compl. ¶ 42.) Plaintiffs contend that as the CFO, Defendant Chou was a "senior finance employee" and was in a "management" position during the relevant time periods. (Am. Compl. ¶ 40.) Therefore, Plaintiffs assert that Defendant Chou "matche[d] [the] descriptors" to be the unnamed senior finance employee. (Am. Compl. ¶ 42.)

In the alternative, the Amended Complaint alleges that even if Defendant Chou was not the unnamed senior finance employee, he still must have known about or recklessly disregarded the falsified accounting records. (Am. Compl. ¶ 39.) Under either theory, if the misappropriation of funds in the first fiscal quarter of 2018 had occurred prior to November 16, 2017, then Defendant Chou would have known that his certification and signing of the 2017 10-K was false or misleading at the time it was made.[12]

The Amended Complaint also alleges that Defendant Chou was involved in the misappropriation that occurred during the second fiscal quarter of 2018 despite his resignation during the first fiscal quarter of 2018.[13] (Am. Compl. ¶¶ 37, 39.) Plaintiffs support this theory by alleging that following his resignation, Defendant Chou remained with Kulicke for three additional months. (Am. Compl. ¶ 37.) Plaintiffs further assert that Defendant Chou was working

---

[12] *See supra* n. 3.
[13] *See supra* n. 3.

for Kulicke during the second fiscal quarter of 2018, and therefore continued to either be involved with, or knew of, the misappropriation during that quarter.[14] (Am. Compl. ¶¶ 37-39.)

The inferences regarding Defendant Chou's involvement with the fraud are supported by the timing of his resignation and the brevity of his subsequent employment with Nanometrics. (Am. Compl. ¶¶ 37-38.) When accepting all the facts alleged as true and considering them in their entirety, there appears to be more than a sheer possibility that Defendant Chou acted unlawfully. *See Ashcroft*, 556 U.S. at 678. Consequently, this Court finds that the Amended Complaint pleads the requisite particularity regarding each allegedly misleading statement made by Defendant Chou, and that the Amended Complaint has described why the statements could have been misleading at the time they were made. *See City of Cambridge Ret. Sys.*, 908 F.3d at 879. Accordingly, Plaintiffs have adequately pled the material misrepresentation element with respect to Defendant Chou.

Plaintiffs' allegations regarding false or misleading statements by Defendant Chen are also based upon the Company's May 10th 8-K, May 30th 8-K/A, December 2018 10-Q1/A, and 2017 10-K/A. (Am. Compl. ¶¶ 26, 29-35.) However, nowhere in the Amended Complaint do Plaintiffs impute that Defendant Chen knew about or was involved with the misappropriations in the first or second fiscal quarter of 2018.[15] Even when considering Plaintiffs' allegations that Defendant Chou was involved with the fraud, the Amended Complaint fails to establish with the requisite level of particularity that Defendant Chen was aware of any fraud or weaknesses in internal controls as of November 16, 2017. (Am. Compl. ¶ 39.) At most, the Amended Complaint alleges facts demonstrating that Defendant Chou, and not Defendant Chen, knew

---

[14] *See supra* n. 3.
[15] *See supra* n. 3.

about the weaknesses in the Company's internal controls at the time he certified the 2017 10-K. (Am. Compl. ¶ 39.)

In granting the defendants' motion to dismiss in *Wanca*, the District Court for the Northern District of California recognized that the company's SOX certifications contained qualifying language stating that the "declarants only certified the financial reporting to the extent of his or her knowledge *on the date of execution*." *Wanca*, 2018 U.S. Dist. LEXIS 107758, at *14, 24 (emphasis added). Accordingly, the court found that the plaintiffs had failed to adequately plead falsity on the part of the defendants because the complaint did not allege "facts explaining why the declarants knew the financial reporting was false at the time it was made." *Id.* Similarly, the SOX certification signed by Defendant Chen plainly states that the certification was "based on [his] knowledge," and "based on [his] most recent evaluation of internal controls[]" as of November 16, 2017. (Mot. Dismiss Am. Compl. 18.) Importantly, the 2017 10-K/A articulated that the unauthorized payments were discovered sometime after March of 2018. (Am. Compl. ¶ 26.) However, the allegedly false statements by Defendant Chen were made in November of 2017. (Am. Compl. ¶ 22.) It would be unreasonable, based on the timing of these events and the facts pled, to impute that Defendant Chen knew that the statements he made in the 2017 10-K were false or misleading unless he was in some way involved with the fraud. For the aforementioned reasons, the claims against Defendant Chen shall be dismissed for failure to satisfy the pleading standards set forth in Rule 9(b) and the PSLRA.[16]

---

[16] Plaintiffs provide the court with no facts or authority to support the notion that an allegation must be imputed from a company's CFO to the CEO. Albeit not in the CFO and CEO context, the Third Circuit has affirmed the dismissal of a 10b-5 claim against one executive of a company while allowing claims against another executive at the same company to proceed. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493-94 (3d Cir. 2013) (dismissing 10b-5 claims against an employee who was an executive, senior managing director, and partner, while not dismissing the

As it pertains to Kulicke, the Amended Complaint alleges that the Company is liable for the acts of Defendants Chou and Chen and its other employees under the doctrine of respondeat superior and common law principles of agency. (Am. Compl. ¶ 19.) The Third Circuit has held that liability for fraudulent statements can be imputed to a Company even if the Complaint focuses on statements made by a Company's CEO and CFO. *Avaya*, 564 F.3d at 251-52. The court reasoned that a "corporation is liable for the statements made by employees who have the apparent authority to make them." *Id.* at 252. Even when a plaintiff's securities fraud claims are governed by federal law, the question surrounding imputation of the claims to a corporation is assessed under state law. *Belmont*, 708 F.3d at 494. Under Pennsylvania state law, an officer's fraud is imputed to his or her corporation when the officer's conduct was in the course of his employment and was for the benefit of the corporation. *Id.* (citing *In re Pers. & Bus. Ins. Agency*, 334 F.3d 239, 242-43 (3d Cir. 2003)). Plaintiffs' Amended Complaint alleges fraud on the part of the Company's CFO based on his dissemination of false or misleading financial reports and releases. (Am. Compl. ¶ 59.) As a result, Plaintiffs assert that the market price of Kulicke securities was artificially inflated during the Class Period. (Am. Compl. ¶ 59.) Such inflation in the Company's securities prices would represent a benefit to the corporation. Therefore, the liability for fraudulent statements on the part of the Company's CFO can be imputed to Kulicke.

For the reasons set forth herein, this Court finds that Plaintiffs have adequately pled the material misrepresentation element with respect to Defendant Chou and Kulicke, while Plaintiffs have failed to adequately plead this element with respect to Defendant Chen.

---

claims against another employee who was an executive, president, co-managing partner, and chief marketing officer).

## 2.        Scienter on the Part of Defendants Chou and Kulicke

Defendants' Motion to Dismiss also seeks dismissal on the grounds that Plaintiffs failed to adequately plead the requisite strong inference of scienter under the PSLRA. (Mot. Dismiss Am. Compl. 3.)[17] The second element a plaintiff must plead in order to adequately allege a Section 10(b) securities fraud claim is that the defendant acted with scienter. *In re Hertz*, 905 F.3d at 114. Under the PSLRA, a plaintiff adequately pleads scienter when the Complaint "state[s] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (citing 15 U.S.C. § 78u-4(b)(2)(A)). A defendant acting with the requisite state of mind is one who consciously or recklessly "embrac[es] [an] intent to deceive, manipulate, or defraud."[18] *Id.* (citing *Avaya*, 564 F.3d at 252). In this context, a reckless statement by a defendant is one which "involv[es] not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Avaya*, 564 F.3d at 267 n.42 (citing *In re Advanata,* 180 F.3d at 535).

---

[17] The court will not conduct a scienter analysis for Defendant Chen because inasmuch as this Court has determined that Plaintiffs' Amended Complaint failed to adequately plead the material misrepresentation element as it pertains to Defendant Chen, the court need not conduct a scienter analysis as to said Defendant. *See City of Cambridge Ret. Sys.*, 908 F.3d at 883 (declining to analyze whether a defendant acted with the requisite scienter because plaintiffs failed to adequately plead the material misrepresentation element). Further, the Third Circuit has recognized that a Complaint must establish an inference of scienter for "each individual defendant in multiple defendant cases." *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007) (quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 603 (7th Cir. 2006) ("*Tellabs*"), *rev'd on other grounds*, 551 U.S. 308 (2007)).

[18] Prior to the enactment of the PSLRA and the Supreme Court's decision in *Tellabs*, the Third Circuit permitted the pleading of motive and opportunity as independent means by which to establish scienter. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006). Today, motive and opportunity still may add to the larger scienter puzzle, but such allegations must be supported by facts stated with particularity. *Avaya*, 564 F.3d at 278 (quoting *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004)).

The Supreme Court stated that "[t]he strength of an inference cannot be decided in a vacuum." *Tellabs*, 551 U.S. at 323. Accordingly, a court's analysis of the pleaded facts and their resulting inferences is inherently comparative. *Id.* In addition to considering inferences favoring the plaintiff, the "court must consider plausible, nonculpable explanations for the defendant's conduct[.]" *Id.* at 324. The court should ask "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Avaya*, 564 F.3d at 269 (quoting *Tellabs*, 551 U.S. at 310). The strong inference of scienter need not be of the "smoking-gun" variety, nor even be the most plausible of competing inferences. *Tellabs*, 551 U.S. at 324. However, the inference must stretch beyond the sphere of being merely "reasonable" or "permissible[,]" and it must instead be "cogent and compelling, thus strong in light of other explanations." *Id.* at 310; *see also In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 150 (3d Cir. 2004) ("*Alpharma*") (concluding that inferences of scienter only survive a motion to dismiss if they are both reasonable and strong). Consequently, a Complaint will only survive if a reasonable person would find "the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Winer Family Trust*, 503 F.3d at 328 (quoting *Tellabs* 551 U.S. at 324).

Plaintiffs herein allege an inference of scienter on the part of Defendants based upon the following: (1) Defendant Chou's resignation and subsequent employment with Nanometrics (Am. Compl. ¶¶ 37-43); (2) the Company's discovery of fraud, and the subsequent press releases, restated financial statements, admissions of prior weaknesses, and planned remediation of its internal controls (Am. Compl. ¶¶ 29-36); and, (3) Defendants Chou and Chen's SOX certifications and signings of the 2017 10-K (Am. Compl. ¶¶ 23-25). When assessed individually and in total, this Court finds Plaintiffs have not pled facts that establish inferences of scienter on

behalf of Defendant Chou and Kulicke that are cogent and at least as compelling as the plausible, nonculpable inferences that can be drawn from the facts alleged.

### i.     Defendant Chou

Plaintiffs allege that the timing and reasoning for Defendant Chou's resignation support a strong inference of scienter. (Am. Compl. ¶ 43.) However, the Third Circuit has stated that the resignation of corporate officials will not strengthen an inference of scienter if the "allegations do not cogently suggest that the resignations resulted from the . . . executives' knowing or reckless involvement in a fraud." *In re Hertz*, 905 F.3d at 119. Plaintiffs' allegations seeking to link Defendant Chou's resignation with the discovered fraud are focused on speculation that Defendant Chou was involved the fraud. (Am. Compl. ¶ 43); *see In re Merck & Co., Sec., Derivative & "ERISA" Litig.*, No. 1658 (SRC), 2011 U.S. Dist. LEXIS 87578, at *111 (D.N.J. Aug. 8, 2011) (finding that allegations of scienter that "barely rise above speculation" fall short of meeting the strong inference standard of the PSLRA). Defendant Chou resigned on November 27, 2017. (Am. Compl. ¶ 16.) His resignation occurred at least four months before the Company discovered the fraud, and over six months before the Company issued its restatements. (Am. Compl. ¶¶ 16, 33-34.) However, the Amended Complaint fails to allege that Defendant Chou resigned because of his involvement or knowledge of fraud that had yet to be discovered by Kulicke.

Additionally, even if this Court were to accept Plaintiffs' speculative allegation that Defendant Chou was the senior finance employee, the timing of his certification raises an additional question about whether he could have acted with the requisite degree of scienter when he signed the SOX certifications. (Am. Compl. ¶ 39.) Defendant Chou certified the 2017 10-K on November 16, 2017. (Am. Compl. ¶¶ 22-25.) Kulicke's investigation discovered that the

misappropriations occurred during the first and second fiscal quarters of 2018.[19] (Am. Compl. ¶¶ 30, 35.) Because Defendant Chou signed the SOX certification approximately halfway through the first fiscal quarter, it is plausible that the fraud actually occurred after the 2017 10-K was certified.[20]

Furthermore, Defendant Chou resigned from his positions with Kulicke on November 27, 2017, and he subsequently left the Company on February 28, 2018. (Am. Compl. ¶¶ 37-38.) Defendant Chou's immediate resignation from his positions in November and his subsequent February departure makes it unlikely that it would have been possible for him to misappropriate funds between January and March of 2018. Importantly, Kulicke discovered that the same senior finance employee was responsible for the fraud in both the first and second fiscal quarters.[21] (Am. Compl. ¶ 35.) However, during the entirety of the second fiscal quarter, Defendant Chou was either resigned from his previous roles or no longer working at Kulicke.[22] (Am. Compl. ¶¶ 37-38.) A more compelling inference would be that another employee was responsible for the fraud during the second fiscal quarter, and that same employee was therefore responsible for the fraud in the first fiscal quarter as well.[23]

Plaintiffs' Amended Complaint also attempts to call into question Defendant Chou's explanation for his resignation from Kulicke. (Am. Compl. ¶ 43.) The Amended Complaint attempts to establish that the explanation for his resignation–to spend more time with family and pursue other interests–was false because he began working for Nanometrics three months later. (Am. Compl. ¶ 43.) Similarly, these assertions by Plaintiffs are speculative at best, and therefore

---

[19] *See supra* n. 3.
[20] *See supra* n. 3.
[21] *See supra* n. 3.
[22] *See supra* n. 3.
[23] *See supra* n. 3.

do not adequately establish or enhance an inference of scienter. In light of the facts pled, this Court finds that the Amended Complaint has failed to allege sufficient facts to support an inference that Defendant Chou resigned because he was involved with the subsequently discovered fraud.

Lastly, the fact that Defendant Chou signed a SOX certification does not in itself support the claim that he knew or must have known that his certification presented a danger to mislead buyers or sellers. *See In re Radian Sec. Litig.*, 612 F.Supp.2d 594, 620 (E.D. Pa. 2009); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009) (concluding that SOX certifications, without more, do not sufficiently reach the strong inference standard of scienter); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) (reasoning the PSLRA's pleading standards for scienter would be eviscerated if courts allowed SOX certifications to establish a strong inference of scienter whenever there was an accounting error or auditing mistake in a company's financial statement).

Here, Defendant Chou's 2017 10-K SOX certifications were eventually discovered to have been false. However, the discovery that the SOX certifications were false was not made until at least four months after the 2017 10-K had been issued. (Am. Compl. ¶ 33.) Without additional facts being pled with particularity, this Court simply cannot infer that the Defendant Chou knew or must have known that his SOX certifications in November of 2017 were false because weaknesses in internal controls would eventually be revealed months down the road.

In light of the foregoing, Plaintiffs' Amended Complaint has failed to adequately plead the requisite degree of scienter required under the PSLRA on the part of Defendant Chou.

### ii. Kulicke

In response to the instant Motion, Plaintiffs argue that Kulicke's assessment of a remedial plan following the discovery of the weaknesses in its internal controls supports a strong inference of scienter. (Opp'n Mot. Dismiss 14-15.) In pertinent part, the Company's December 2018 10-Q1/A (issued on May 31, 2018) stated that Kulicke was assessing a remediation plan through which it anticipated leadership changes within its finance department. (Am. Compl. ¶ 36.) Defendants contend that considering remedial action after the discovery of weaknesses supports the non-culpable inference that Kulicke was attempting to improve its processes to prevent future mistakes. (Mot. Dismiss Am. Compl. 21.) This Court agrees. *See Messner v. United States Techs., Inc.*, No. 15-5427, 2016 U.S. Dist. LEXIS 50132, at *35-36 (E.D. Pa. Apr. 13, 2016) (recognizing that a company's plans for "significant remedial actions" supported a non-culpable inference because the plans demonstrated that the defendants had discovered an error, and were attempting to improve their business practices in an effort to reduce the likelihood of another reporting error); *see also In re Hertz*, 905 F.3d at 119 (finding that changes in leadership are not in and of themselves symbols of fraud because such changes should be anticipated when leadership fails). The Company's plan to fix weaknesses that were investigated and discovered between March and May does not establish a culpable inference of scienter that is cogent and at least as compelling as a plausible and nonculpable inference favoring the Company. As stated in *Messner*, the more compelling inference would be that the Company was attempting to fix the weaknesses uncovered in its investigation. *See Id.*

Under the corporate scienter doctrine, a plaintiff can "plead an inference of scienter against a corporate defendant without raising the same inferences required to attribute scienter to an individual defendant." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246 (3d Cir. 2013). The

Third Circuit has not accepted nor rejected this doctrine in the securities fraud context. *Id*; *see also In re Hertz,* 905 F.3d at 121 n.6 (reaffirming that the Third Circuit has neither accepted nor rejected the corporate scienter doctrine, and declining to recognize the doctrine on the alleged facts because the allegations would not establish corporate scienter under any recognized theory of the doctrine). However, the uncertainty surrounding the doctrine's applicability within the Third Circuit is not dispositive regarding whether a claim against a corporate defendant should be dismissed. *See In re Toronto-Dominion Bank Sec. Litig.*, No. 17-1665 (NLH/JS), 2018 U.S. Dist. LEXIS 206043, at *54 (D.N.J. Dec. 6, 2018) (stating that the court cannot dismiss a plaintiff's claim simply because the corporate scienter doctrine is unsettled law within the Third Circuit). Importantly, the Courts of Appeals are split as to whether corporate scienter is an adequate means to plead scienter on the part of a corporate defendant.

On one side of the circuit split, courts have rejected the corporate scienter doctrine all together. *See Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004) (construing the PSLRA as requiring that a plaintiff plead "facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations"); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365-67 (5th Cir. 2004) (rejecting that scienter can be pled against a corporate entity without plaintiff successfully pleading that an officer of the corporation made fraudulent or misleading statements with the required degree of scienter). Under these views of the corporate scienter doctrine, it is clear that Plaintiffs' claims against Kulicke must be dismissed because Plaintiffs have failed to adequately plead Section 10(b) claims against either Defendant Chou or Chen. Despite the uncertain viability of the doctrine within the Third Circuit, the court has previously hypothesized the outcome of its application

under certain factual scenarios. *See City of Roseville Emps. Ret. Sys. v. Horizon Lines Inc.*, 442 F. App'x 672, 676-77 (3d Cir. 2011) ("*City of Roseville*").

For example, in *City of Roseville* the securities fraud claims involved a price fixing scheme, and the claims were brought against the company and eight employees who were all either managers or executives. *City of Roseville*, 442 F. App'x at 673 (3d Cir. 2011). Three of the individual defendants ("Puerto Rico managers") pled guilty to price fixing in the company's Puerto Rico market place between 2002 and 2008. *Id.* Conversely, the plaintiffs' complaint alleged that statements by the other five defendants ("senior executives") explaining why the company was doing well in the Puerto Rico market for reasons other than price fixing were materially false. *Id.* The Third Circuit addressed the district court's conclusion that the corporation could not be liable because none of the individual defendants made materially false statements and acted with scienter. *Id.* at 674, 76-77. The court found that "[e]ven if . . . it were possible to plead [corporate scienter], the facts alleged here would not survive a motion to dismiss." *Id.* at 676-77. In reaching this conclusion, the court recognized that the facts before it were a "far cry" from the facts and hypotheticals under which other circuit courts found vitality in the corporate scienter doctrine.[24] *Id* at 676.

_____

[24] The Second, Sixth, and Seventh Circuits are among the courts that recognize the corporate scienter doctrine. *See e.g., Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196-97 (2d Cir. 2008) (recognizing the corporate scienter doctrine, but finding that the facts pled did not give rise to a strong inference of scienter on the part of the corporate defendant in light of competing inferences); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 656-59, 690-91 (6th Cir. 2005) ("*Bridgestone*") (finding that despite the court dismissing the claims against the individual defendants, the corporate defendants still had the requisite degree of scienter because the corporate defendants were involved in a large-scale cover-up scheme that aimed to hide the fact that the tires that they were manufacturing were rupturing and causing many accidents); *Tellabs*, 513 F.3d at 710 (hypothesizing that a strong inference of corporate scienter would exist if "General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero . . . since so dramatic an announcement would have been approved by corporate officials sufficiently

As the court found in *City of Roseville*, this Court similarly finds that even if the Third Circuit was among the circuit courts that expressly recognized the doctrine of corporate scienter, the facts of this case are distinguishable and a "far cry" from those pled in *Bridgestone*, or in the hypothetical put forward by the Seventh Circuit in *Tellabs*. Here, like in *Bridgestone*, the facts do not support the existence of any type of large-scale cover-up scheme. Unlike the price fixing scheme in *City of Roseville*, which persisted for nearly six years, the misappropriations by the senior finance employee at Kulicke were limited to two known instances within a six-month window. Furthermore, based upon the Company's internal investigation, it was discovered in May 2018 that the two misappropriations had occurred between October and December of 2017, and January and March of 2018. (Am. Compl. ¶¶ 30, 35.) The timeliness of Kulicke's discovery of this information, along with the brief window during which the misappropriations occurred, distinguishes the present facts from *Bridgestone* or the Seventh Circuit's hypothetical in *Tellabs*. Furthermore, Defendants' Reply adequately distinguishes the facts of this case from cases in our sister courts where the applicability of the corporate scienter doctrine was recognized. (Defs.' Reply Ex. A.) Nevertheless, Plaintiffs' allegations are insufficient to sustain a claim against Kulicke under current Third Circuit precedent. Accordingly, Plaintiffs' Rule 10b-5 claims against Defendant Chou and Kulicke shall be dismissed.

---

knowledgeable about the company to know that the announcement was false"). Additionally, the Ninth Circuit has not precluded the application of the doctrine, finding that "in certain circumstances, some form of collective scienter pleading might be appropriate." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008).

### 3. Standing and Damages Under the PSLRA

Economic loss is an element that Plaintiffs must plead in order to adequately allege a securities fraud claim under Section 10(b). *See In re Hertz*, 905 F.3d at 114. The damages Plaintiffs may recover is constrained by Section 78u-4(e)(1) of the PSLRA. 15 U.S.C. § 78u-4(e)(1). Section 78u-4(e)(1) of the PSLRA states that Plaintiffs' recovery "shall not exceed the difference between the purchase or sale price paid or received . . . by the plaintiff for the subject security[,] and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." *Id.* The 90-day mean trading price is the "average of the daily trading price of that security . . . [at] the close of the market each day during the 90-day period[.]" 15 U.S.C. § 78u-4(e)(3). Inasmuch as this Court has determined that Plaintiffs failed to plead either the material misrepresentation or scienter elements required under Section 10(b) with respect to each Defendant, the issue of economic loss is rendered moot.[25]

---

[25] The court notes that the lead case cited by Defendants with respect to this issue is factually distinct from this case. In *In re National Australia Bank Securities Litigation*, the court began its analysis by dismissing the "Lead Foreign Plaintiffs" from the action because the court lacked subject matter jurisdiction over their claims. *In re Nat'l Austl. Bank Sec. Litig.*, 2006 U.S. Dist. LEXIS 94162, at *26 (S.D.N.Y. Oct. 25, 2006). This left the court to consider whether the single remaining "Lead Domestic Plaintiff" lacked standing due to his failure to allege damages under the PSLRA. *Id.* at *26-29. The court concluded that this lone remaining plaintiff did in fact lack standing and it dismissed the action. *Id.* at *28. Here, however, while Defendants contest that Co-Lead Plaintiff Dandeles and Plaintiff Kumar lack standing, Defendants do not assert that Co-Lead Plaintiff Walsh lacked standing.

This Court further notes that as Co-Lead Plaintiffs, Plaintiffs Dandeles and Walsh, among other qualifications, "ha[ve] the largest financial interest in the relief sought by the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb). In that regard, Plaintiff Dandeles is alleged to have suffered the most damages at a total value of $225.36, while Plaintiff Walsh asserts a loss of $215.46. (ECF Nos. 9, 14-3.)

### B. Plaintiffs' Section 20(a) Claims

Count II of Plaintiffs' Amended Complaint asserts that Defendants Chou and Chen violated Section 20(a) of the Exchange Act. (Am. Compl. ¶¶ 63-68.) Section 20(a) imposes joint and several liability upon "[e]very person who . . . controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder." 15 U.S.C. § 78t(a). Section 20(a) creates a cause of action against individuals exercising control over a corporation that has violated Section 10(b) of the Exchange Act. *City of Edinburgh Council*, 754 F.3d at 177.

Section 20(a) requires a plaintiff to prove that one person controlled another person, and that the "controlled person" was liable under the Exchange Act. *Belmont*, 708 F.3d at 484 (quoting *Alpharma*, 372 F.3d at 153), *abrogated on other grounds by Tellabs*, 551 U.S. 308. If the controlled person is not liable under the Exchange Act, then no secondary liability against a controlling person can attach under Section 20(a). *Alpharma,* 372 F.3d at 153. Furthermore, for there to be liability under Section 20(a), the controlling person must have been a "culpable participant" in the acts through which the claim against the controlled person arose. *Belmont*, 708 F.3d at 484. If the answer to what the controlling person did that intentionally furthered the controlled person's fraud is nothing, then a plaintiff's Section 20(a) claim must fail. *Id.* at 487.

In this case, Plaintiffs' Amended Complaint alleges that the "controlled person" was Kulicke. (Am. Compl. ¶ 66.) Plaintiffs further claim that Defendants Chou and Chen were "controlling persons" of Kulicke because of their positions with the Company. (Am. Compl. ¶ 66.) However, for the aforementioned reasons, Plaintiffs failed to adequately allege an Exchange

Act claim against Kulicke. Therefore, without such a predicate claim, Plaintiffs' control person liability claim cannot survive.[26]

### C.     Leave to Amend

Defendants argue that Plaintiffs' Amended Complaint should be dismissed with prejudice. (Mot. Dismiss Am. Compl. 26.) Plaintiffs have not requested leave to amend in the event of dismissal. However, Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is properly denied on grounds such as "undue delay, bad faith, dilatory motive, prejudice, and futility." *Cal. Pub. Emps.' Ret. Sys.*, 394 F.3d at 165. Importantly, the Third Circuit has also stated that "[o]rdinarily where a complaint dismissed on Rule 9(b) . . . grounds alone, leave to amend is granted[.]" *Id.* (quoting *In re Burlington Coat Factory*, 114 F.3d at 1435). Therefore, because Plaintiffs' Amended Complaint is being dismissed for pleading deficiencies under Rule 9(b) and the PSRLA, Plaintiffs shall be granted leave to amend.

---

[26] Inasmuch as Plaintiffs' Section 20(a) claim fails to establish a predicate Exchange Act violation, this Court declines to address the split among the District Courts within the Third Circuit regarding the pleading standards required for Section 20(a) claims.

## V.    CONCLUSION

In light of the foregoing, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint shall be granted with respect to each Defendant. With specific regard to Defendant Chen, this Court finds that Plaintiffs failed to adequately plead the material misrepresentation element required under the PSLRA and Rule 9(b). Conversely, Plaintiffs adequately pled this element for both Defendants Chou and Kulicke. However, for the reasons set forth hereinabove, the court grants Defendants' Motion to Dismiss with respect to Defendant Chou and Kulicke because Plaintiffs failed to plead facts with particularity to plausibly show that either Defendant Chou or Kulicke acted with the requisite degree of scienter. Plaintiffs shall be granted leave to amend.

An appropriate Order follows.

BY THE COURT:


/s/  C. Darnell Jones, II     J.